IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Criminal Case No. 16-cr-00383-RBJ

UNITED STATES OF AMERICA,

    Plaintiff,
v.

DANIEL RAY DACE,

    Defendant.

## ORDER

This matter is before the Court on the government's motion for reconsideration, ECF No. 54, of this Court's June 24, 2020 order, ECF No. 53, granting movant Daniel Ray Dace's motion to vacate his conviction and sentence under 28 U.S.C. § 2255, ECF No. 52. For the reasons stated herein, the government's motion for reconsideration is GRANTED, this Court's June 24, 2020 order is VACATED, and movant's § 2255 motion is DENIED.

## I. BACKGROUND

On April 13, 2017 Mr. Dace pled guilty to two counts of possession of a firearm by a previously convicted felon in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) ("Count One" and "Count Four"), one count of possession of a controlled substance with the intent to distribute in violation of 21 U.S.C. § 841(a)(a) ("Count Two"), and one count of possession of a firearm during and in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) ("Count Three"). ECF No. 26 at 1.

On June 29, 2017 I sentenced Mr. Dace to concurrent terms of 108 months' imprisonment on Counts One, Two, and Four, to run consecutively to a term of 60 months'

imprisonment on Count Three. ECF No. 47. Mr. Dace appealed the substantive reasonableness of his combined sentence of 14 years' imprisonment. ECF No. 40. The Court of Appeals for the Tenth Circuit affirmed the sentence on January 12, 2018. *See United States v. Mr. Dace*, 720 F. App'x 961, 962 (10th Cir. 2018). Mr. Dace did not file a petition for a writ of certiorari, and his conviction and sentence became final on May 6, 2018.

On June 21, 2019 the Supreme Court issued its holding in *Rehaif v. United States*, which narrowed the scope of § 922(g) and 924(a)(2). *See* 139 S. Ct. 2191 (2019). On October 24, 2019 Mr. Dace filed a motion to vacate his conviction and sentence under 28 U.S.C. § 2255. ECF No. 52 at 1. He argues that his plea of guilty to two counts of possessing a firearm as a convicted felon under § 922(g)(1) is constitutionally invalid in light of *Rehaif*. *Id*. The government did not respond. I granted Mr. Dace's motion eight months later on June 24, 2020. ECF No. 53.

The government filed a motion for reconsideration on June 25, 2020. ECF No. 54. It argues that per Rule 4(b) of the Rules Governing Section 2255 Proceedings, the Court should have ordered the government to file an answer, motion, or other response to Mr. Dace's motion. *See* Rule 4(b) of the Rules Governing Section 2255 Proceedings. On the same day, the government also separately filed its prepared response to Mr. Dace's § 2255 motion. ECF No. 55. Mr. Dace does not oppose the Court's reconsidering its order, *see* ECF No. 54 at 3, but he argues that the Court's original order should stand. *See* ECF No. 56.

## II. ANALYSIS

Preliminarily, this Court grants the government's motion for reconsideration of the June 24, 2020 order granting defendant's § 2255 motion. The Court acknowledges the government's right to respond to defendant's § 2255 motion before issuing an order. *See* Rule 4(b) of the Rules Governing Section 2255 Proceedings.

2

In its response, the government asserts that (1) Mr. Dace procedurally defaulted his § 2255 claim and (2) Mr. Dace waived his right to bring this challenge vis-à-vis his plea agreement. As regards procedural default, "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Bousley v. United States*, 523 U.S. 614, 618 (1998). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent' . . . ." *Id.* at 622 (citations omitted) (quoting *Murray v. Carrier*, 477 U.S. 478, 485 (1986)).

First, cause can be shown when a claim "'is so novel that its legal basis [wa]s not reasonably available to counsel' at the time of the direct appeal." *United States v. Snyder*, 871 F.3d 1122, 1127 (10th Cir. 2017) (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)) (alteration in original). The Supreme Court has recognized two situations in which a claim will be deemed not reasonably available: (1) when the Supreme Court "explicitly overrule[s]" one of its own precedents or (2) when the Supreme Court "overturn[s] a longstanding and widespread practice to which" the Court had not spoken, "but which a near-unanimous body of lower court authority ha[d] expressly approved." *Ross*, 468 U.S. at 17. As to the second category, the Tenth Circuit interprets the Supreme Court's subsequent holding in *Bousley v. United States* as having "narrowed the broad *Reed* 'novelty' test." *Daniels v. United States*, 254 F.3d 1180, 1191 (10th Cir. 2001) (en banc) (citing *Bousley*, 523 U.S. at 618). The Tenth Circuit has emphasized that per *Bousely*, "[f]utility cannot constitute cause if it means simply that the claim was unacceptable to that particular court at that particular time." *Id.* (citing *Bousley*, 523 U.S. at 618) (internal quotations omitted?).

I find that the Supreme Court's decision in *Rehaif* "overturn[ed] a longstanding and widespread practice to which" the Court had not spoken, "but which a near-unanimous body of lower court authority ha[d] expressly approved." *Ross*, 468 U.S. at 17. Indeed, Justice Alito's dissent in *Rehaif* complained that the majority "casually overturn[ed] the long-established interpretation of an important criminal statute, 18 U.S.C. § 922(g), an interpretation that ha[d] been adopted by every single Court of Appeals to address the question." *Rehaif*, 139 S. Ct. at 2201 (Alito, J., dissenting). The consensus among lower courts—ten Courts of Appeals, to be precise—suffices to show the requisite "longstanding and widespread practice." *Ross*, 468 U.S. at 16–17. The new argument presented in *Rehaif* was more than merely "unacceptable to that particular court at that particular time" at Mr. Dace's trial and direct appeal. *Daniels*, 254 F.3d at 1191.

Second, Mr. Dace must show "prejudice arising 'from the errors' that form the basis of [his] substantive claims." *Smith v. Allbaugh*, 921 F.3d 1261, 1271 (10th Cir. 2019) (quoting *United States v. Frady*, 456 U.S. 152, 167–68 (1982)). The Tenth Circuit has explained that the prejudice prong of procedural default depends on the type of claim at issue. *See id.* (citing *Frady*, 456 U.S. at 169). Here, Mr. Dace's substantive claim is a constitutionally invalid plea. As such, the prejudice prong requires Mr. Dace to show that the alleged error resulted in "a reasonable probability that, but for [the] errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59 (1985) (providing the standard for procedural default prejudice in the context of a constitutionally invalid plea resulting from ineffective assistance of counsel).

The government argues that the standard for prejudice in the context of procedural default is higher than "reasonable probability." It cites *United States v. Frady* for this

4

proposition, arguing that *Frady* stated that the standard for prejudice is "a significantly higher hurdle" than the standard on direct review of "reasonable probability." *See Frady*, 456 U.S. at 166; *see also United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004) (addressing the "reasonable probability" plain error standard). Yet this is a misstatement of *Frady*. *Frady* did not compare the standard for prejudice against the standard on direct review; it compared the standard on collateral review against the standard on direct review. It thus held that "[t]he proper standard for [collateral review] is the 'cause and actual prejudice' standard." *See Frady*, 456 U.S. at 167. Requiring both cause (reasonable unavailability at the time of direct review) and prejudice (reasonable probability thereof) is a higher hurdle than requiring merely prejudice. Indeed, the Supreme Court has applied the "reasonable probability" test in evaluating prejudice in the context of procedural default regarding an improper evidence disclosure claim under *Brady v. Maryland,* 373 U.S. 83 (1963). *See Strickler v. Greene*, 527 U.S. 263, 289 (1999) ("[Petitioner] must convince us that 'there is a reasonable probability' that the result of the trial would have been different if the suppressed documents had been disclosed to the defense.").

Mr. Dace must thus show that there is a "reasonable probability" that he would have refused to plead guilty to violating § 922(g) had he been informed of the element recognized in *Rehaif*. In my June 24 order I noted that the record contained no indication that Mr. Dace knew that he had been convicted of a crime punishable by more than one year at the time he possessed the weapon. ECF No. 53 at 3–4. Mr. Dace received a deferred sentence and did not serve any prison time. His situation is comparable to that of *Rehaif*, where the defendant had similarly been sentenced to probation and served no time. *See Rehaif*, 139 S. Ct. at 2198. I also noted that Mr. Dace's circumstance is in contrast to cases in which federal courts found that the record did

support defendants' knowledge of their status based on the defendants' stipulation to being a felon or the defendants' prior served prison time. ECF No. 53 at 3–4.

However, the government points out that Colorado Rule of Criminal Procedure 11(b)(4) provides that a Colorado state court cannot accept a guilty plea without ensuring that a defendant understands both the possible penalty and the attendant mandatory parole, even if the parties agreed to a sentencing recommendation or stipulated to probation. *See Dawson v. People*, 30 P.3d 213, 216 (Colo. 2001). Though the record does not expressly establish that Mr. Dace received such advisements when he pled guilty to his prior felony in October 2014, the government argues that we can presume that the state court followed the applicable procedures. *See People v. Sandoval*, 535 P.2d 1120, 1121 (Colo. 1975) ("We have in a long line of cases reiterated the necessity for trial courts to adhere strictly to the requirements of Crim. P. 11 when pleas of guilty are being considered."). Mr. Dace does not argue that the state court failed to comply with this procedure. He argues instead that the government would nevertheless be hard-pressed to prove that he remembered the maximum possible penalty two years after being informed of it, particularly when he actually received a much less severe punishment.

The government points out that, regardless, there is no reasonable probability that Mr. Dace would have rejected the plea agreement as a whole. It notes that Mr. Dace was facing a ten-year minimum sentence from the combination of the drug charge and the § 924(c) charge. Given his overwhelming guilt on the drug charge and the § 924(c) charge, his primary concern was limiting his eventual sentence. In return for his guilty plea, he received the benefit of a 3-level guidelines reduction and a government recommendation of no more than 15 years in prison. With that reduction, his sentencing range was 108 to 135 months (plus 60 months for the § 924(c) charge) as opposed to a range of 151 to 188 months (plus the 60 months) without the

reduction. He ultimately received the bottom end of the Guidelines with a sentence of 168 months.

I disagree with the government's assumption that the relevant question is whether there is a reasonable probability that Mr. Dace would have rejected the plea agreement as a whole. Rather, what matters is whether there is a reasonable probability that the plea agreement would not have included the § 922(g) charges. However, Mr. Dace has not met that burden. Mr. Dace agrees that his "primary concern" was limiting his eventual sentence, which was "driven entirely by the drug charge and the § 924(c) charge." ECF No. 56 at 7. He argues that but for the error he would have had leverage over the government based on "the evidentiary difficulties the government would have faced on the *Rehaif* element [of the 922(g) charges] had it been forced to proceed to trial." *Id*. Yet given that Mr. Dace's primary concern was limiting his eventual sentence, and given that Mr. Dace admits that "[t]he § 922(g) convictions did not affect the [sentencing] range at all," it is unclear why he would have fought including those charges in his plea agreement. Nor is it true that the government would have faced anything more than slight evidentiary difficulties in light of the Colorado procedural rules that indicate that Mr. Dace had been informed of his felon status when he pled to his prior felony. Thus, I cannot say that there is a reasonable probability that Mr. Dace would have refused to include the § 922(g) charges in his plea agreement.

**ORDER**

The government's motion for reconsideration, ECF No. 54, is GRANTED. This Court's June 24, 2020, ECF No. 53, order is VACATED. Movant's § 2255 motion, ECF No. 52, is DENIED.

DATED this 18th day of August, 2020.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge